NATIONAL HATS COMPANY, ETC., Plaintiff and Appellant, v. RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and appellee.

No. 9069. Argued March 9, 1945.—Decided June 6, 1945.

*Angel M. Torres* and *Sergio A. Silva* for appellant. *Jesús A. González, Acting Attorney General,* and *G. Benítez Gautier, Deputy Attorney General,* for appellee.

MR. JUSTICE TODD, JR., delivered the opinion of the court.

The Public Service Commission granted appellant, National Hats Company, as a new industry, an exemption from taxes for the period from March 2, 1932, to January 31, 1935. After this period had expired, that is, on February 4, 1935, the appellant filed a petition in the commission for "an extension of said exemption" for a period of five years, to which the Treasurer of Puerto Rico objected. After several public hearings, on May 4, 1936, the commission rendered a decision granting appellant a new exemption for the period of five years, giving it retroactive effect, to begin on February 1, 1935. In the meantime, on January 15, 1936, the Treasurer levied on the appellant the taxes corresponding to the fiscal year 1936–37, and the firm took an appeal to the Board of Review and Equalization, alleging that its petition for exemption was pending decision, but subsequently

abandoned said appeal when the commission rendered its decision of May 4, 1936. Notwithstanding this, the taxpayer paid under protest the taxes corresponding to the year 1936–37, amounting to $49.50, because the Treasurer insisted on payment under threats of attachment and filed a complaint in the District Court of Bayamón for the return of the taxes, which was dismissed, whereupon the present appeal has been taken.

There are two questions to be determined in this appeal: first, whether the Public Service Commission has power to exempt appellant from taxation from February 1, 1935, to May 4, 1936, that is, if upon rendering its decision on this latter date, it could give the same a retroactive effect and, second, assuming that the exemption did not begin until May 4, 1936, whether the Treasurer could levy and collect the taxes corresponding to the fiscal year 1936–37.

█ █ This case was submitted to the lower court on the pleadings. From the complaint it appeared that appellant had sought and obtained from the commission an "extension" of five years of the previous exemption, while in defendant's answer, when denying the facts, it was alleged that appellant had sought and obtained from the commission "a new exemption for the period of five years, to begin on February 1, 1935." The lower court found that what the commission granted was "a new exemption to begin on February 1, 1935" and apparently this was accepted as correct by the appellant, as in its brief it states that "the new period of exemption was fixed by the commission . . . to begin on February 1, 1935 . . . " We do not believe that the difference in the words used by either party may substantially change the issue raised, that is, whether the commission could grant the exemption with a retroactive effect, and as to this point we are of the opinion that the lower court did not err in deciding it to the contrary.

Act No. 40 of April 25 of 1930, p. 314 (repealed by Act No. 94 of May 14 of 1936) contained no provision authorizing the commission to act in such manner. Section 2 provided *ab initio:*

"Section 2.—That said new industries and their buildings, machinery, materials, franchises, etc., and, in general, all the properties, rights and privileges belonging to said industries, which are necessary in their work and operation, shall be exempt from all taxes for a period not to exceed ten years, as the Public Service Commission may determine. Said term shall be counted from the time the industrial installation is completed; . . ."

Construing this statute in *P. R. Am. Sugar Refinery, Inc.* v. *Domenech, Treas.,* 46 P.R.R. 582, 589, we stated:

"The letter of the statute is so clear as to strike the eye like light. The power of the Legislature to grant the exemption is a question upon which there can be no doubt. The Public Service Commission was created by the Organic Act; but its powers as to the exemption of new industries from taxation are derived from the Legislature of Puerto Rico. The grant of exemption and a determination of the property exempted is a function of the legislative power. . . ."[1]

Although the Legislature delegated to the Public Service Commission part of its power to exempt new industries from taxation, it remained silent as to delegating its power to give retroactive effect to any tax exemption granted by it; and, therefore, we are bound to conclude that the Legislature did not grant said power to the commission and that the latter acted beyond the authority delegated to it. The

[1] Cf. *Grow* v. *General Cable Corporation,* 137 So. 657, 658 (1931):

"The legislative power to exempt industrial plants from taxation for a limited period as an inducement to the location of same in the state is not to be questioned. Whether the benefits to accrue warrant such exemption is a matter of legislative policy. That the Legislature may delegate the power to local governmental units, in the absence of constitutional restrictions, is also the law. [Citations]."

See also *Trustees of Phillips Exeter Academy* v. *Exeter,* 33 A. (2d) 665, 670 (1943).

appellant has not cited any case in support of its theory to the effect that when a governmental agency has had delegated to it the power to grant a tax exemption from a specific date, it should be understood as if, once said period has expired and a new one granted a year later, said agency has also been empowered to apply the new exemption retroactively. It is an elementary rule, even in case of exemptions that statutes should be strictly construed, and that unless it is expressly stated therein that they shall be retroactively applied, they should not be so construed. *Monllor & Boscio, Sucrs.* v. *Sancho Bonet, Treas.*, 61 P.R.R. 63; *Puerto Rico Ilustrado, Inc.* v. *Buscaglia, Treas.*, 64 P.R.R. 870 (decided May 4 of 1941), and authorities cited therein.

The Legislature delegated to the commission part of the legislative procedure to determine the period, not more than ten years, for which a tax exemption could be granted to each new industry. To decide that this delegation included the power to make the exemption retroactive, would be to extend the delegation of power beyond the legislative intent. Even as to the first exemption, the commission could not make it retroactive inasmuch as the statute provided that "said term shall be counted from the time the industrial installation is completed." As to the new extension, it was incumbent on the appellant to file a petition for a new exemption, not only before the expiration of the period, but with ample time for the commission to act before said expiration. We are of the opinion that the decision of May 4, 1936, could be applied prospectively only and consequently the appellant was not exempted from taxation between the period covered from February 1, 1935, and May 4, 1936.

■ Was the appellant corporation bound to pay the taxes corresponding to the fiscal year 1936–37 because it was not exempt from said payment in January 15, 1936?

Appellant contends that, although taxes are levied on January 15th of each year, they are not really owed until

July and January first when they are paid in advance, pursuant to § 330 of the Political Code which provides as follows:

"The taxes imposed on real and personal property shall be payable semi-annually in advance on the first day of July and January of each year. Such taxes shall become delinquent if not paid within sixty days after the date on which the same become due, and the collectors shall collect upon all such delinquent taxes an additional sum of one-half of one per cent of the amount thereof for each month or fraction thereof for which said taxes are so delinquent; *Provided*, That when collectors shall not have the tax receipts in their possession on the first day of July of each year, in such case the aforesaid term of sixty days shall be counted from and after the date on which the receipts shall be in their possession and notice given to that effect."

This Section should be construed in connection with § 298 of the same Code which in its pertinent part provides:

"That all real property shall be assessed in the municipality in which the real property lies to the person who is either the owner or in possession thereof on the fifteenth day of January, and the person appearing of record on the fifteenth day of January shall be held to be the true owner thereof. . . ."

In *Teachers' Ass., etc.* v. *Treasurer*, 54 P.R.R. 511, we held that the liability for the payment of property taxes arises at the time when the assessment of property for tax purposes is completed, and we added on p. 515:

"The necessity of having a date, prior to the actual moment of collection, whereupon the state can definitely estimate its taxable source for the coming fiscal year is obvious. It takes time to prepare the assessment list of the property, the tax roll and the tax receipts. *The taxable status of property should be unaltered after a certain time* and prior to the date of the payment of the tax as the Treasurer must have a fixed basis upon which to float loans, increase or reduce taxes, etc." (Italics ours.)

See also *Roig* v. *Treasurer*, 54 P.R.R. 617; *Valcárcel* v. *Sancho, Treas.*, 61 P.R.R. 207, 210; *Buscaglia* v. *Tax Court*,

63 P.R.R. 37, *Town of Myrtle Beach* v. *Holliday*, 26 S.E. (2d) 12, 14 (1945) ; 2 Cooley, Taxation, 4th ed., § 546.

It is true that so far we have applied the rule established in the above-quoted cases in the sense that conveyances of property made subsequent to January 15 do not exempt the person who appeared as owner on said date from the payment of the tax levied by the Treasurer on the aforesaid date. However, this rule is equally applicable to cases where the property is not exempted from taxation on January 15 but was so exempted at a subsequent date. Cooley, in vol. 2, § 712 of his work, sets forth the rule as to the determination of the day on which exemption becomes effective, thus:

" If property is not exempt on the tax day, it is liable to taxation for the fiscal year although it afterwards becomes exempt. For instance, it has been decided that where land has become liable for taxes it remains so for that year although subsequently acquired for purposes rendering it exempt. So where a constitution forbidding exemptions goes into effect after the time fixed for the assessment of property, the right to exemption from taxation for that year is not affected."

In *Sisters of the Poor* v. *New York*, 3 N. Y. Supp. 433, 20 N. E. 417, cited by Cooley, it was held that property taxable when the books were open for correction of assessments, but afterwards, before they were closed, was transferred to a corporation the property of which was exempt, does not thereby become exempt. And in *Swan* v. *State*, 77 Ala. 545, it was held that where the tax year, as far as it related to real estate, began on January first and certain lands were declared to be exempt from taxation for eight years from May 1, 1876, the term of exemption began with the year 1877. Likewise in *City of Newport* v. *Masonic Temple Association*, 45 S. W. 881, it was held that where the property was exempted from taxation by the defendant on the same day on which they were levied, the right of exemption was not af-

fected by the limitation on exemptions constained in the Constitution approved subsequent to said date.

See also *Board of Com'rs of Comanche County v. Central Baptist Church,* 276 Pac. 726, and the Annotation in 63 A.L.R. 1332.

Since the appellant was not exempt from taxation on January 15, 1936, the lower court did not err in dismissing the complaint.

The judgment appealed from should be affirmed.

Mr. Justice De Jesús did not participate herein.